*740 B.L. THOMAS, J.,
DISSENTING.
I respectfully dissent. As both parties agree, this case presents this court with a conflict between two state constitutional provisions: The Governor’s veto authority under Article III, section 8 of the Florida Constitution, and the constitutional right of public employees to collectively bargain under Article I, section 6 of the Florida Constitution, as interpreted in Dade County Classroom Teachers Association v. The Legislature of the State of Florida, 269 So.2d 684 (Fla. 1972), and implemented in Chapter 447, Florida Statutes. The State asserts that the Governor’s veto power is legally superior to the constitutional right of public employees to collectively bargain, by arguing that the Governor may veto the pay increase granted by the Florida Legislature to resolve a collective bargaining impasse, and absent legislative override, such a veto is the final word. Conversely, the public employees argue that their constitutional right to collectively bargain must, in this limited instance, trump the Governor’s veto authority, absent the Governor demonstrating a compelling public interest to justify the veto of the Legislature’s resolution of the impasse in the employees’ favor. See Chiles v. United Faculty of Fla., 615 So.2d 671, 673 (Fla. 1993) (“[W]e agree with the trial court that the legislature has authority to reduce previously approved appropriations ... made pursuant to a collective bargaining agreement, but only where it can demonstrate a compelling state interest.”). Otherwise, the public employees argue, their right to collective bargaining is eviscerated. Here, the public employees’ argument should prevail, which would not otherwise significantly impair the Governor’s general veto authority and properly harmonizes conflicting provisions of organic law. State v. Div. of Bond Fin. of Dep’t of Gen. Servs., 278 So.2d 614, 617 (Fla. 1973) (“It is a fundamental rule of construction that, if possible, amendments to the Constitution should be construed so as to harmonize with other constitutional provisions, but if this cannot be done, the amendment'being the last expression of the will of the people will prevail.”).
The State assetts that public employees, who accomplished a herculean task by convincing a majority of both houses of the Legislature to grant a positive ruling on an impasse, must then return to the Legislature and convincé two-thirds of the membership to override the veto, in order to preserve the Legislature’s resolution of the impasse. To impose such a requirement on public employees in essence holds that public employees have no effective constitutional right to collective bargaining, as they must in fact accomplish not simply a herculean task, but instead achieve a near-impossible feat of persuading the Legislature to exercise its override authority, an extremely rare occurrence, precisely because of the grave political ramifications an override necessarily causes between the Executive and Legislative branches.[1]
To avoid a result that renders hollow the constitutional right of collective bargaining, the Public Employees Relation Act should be interpreted to require that the Governor demonstrate a compelling public interest, such as a budgetary emergency, to sustain a gubernatorial veto of a legislative resolution of impasse. While public employees have no right to receive a favorable resolution from the Legislature on collective bargaining, once the Legislature *741 has ruled in the public employees’ favor and against the Governor, it cannot be reconciled with Article I, section 6 of the Florida Constitution to allow the Governor to render the Legislature’s decision a nullity through the veto authority.
Here, collective bargaining reached an impasse between the Governor and Appellants regarding disputed wages for fiscal year 2015-2016. To resolve the impasse, under section 447.203 and 447.403, Florida Statutes, the Legislature appropriated a $2000 individual salary increase for the firefighters’ bargaining unit, or a specific appropriation of $1.57 million. Following this resolution, the Governor vetoed the salary increase, stating that “this issue should be addressed at a statewide level for all employees.” See Budget Transmittal Letter from Rick Scott, Governor of Fla., to Ken Detzner, Sec’y of State (June 23, 2015) (vetoing section 8(a) specifying pay issues, Ch. 2015-232, Laws of Fla. pg. 404).
In United Faculty of Florida, the supreme court held that once the Legislature resolved an impasse with state employees by enacting a 3% pay increase,[2] even the Legislature, absent a compelling state interest, was powerless to retract the increase, notwithstanding a severe budget shortfall. 615 So.2d at 672-73. The court noted that once the Legislature resolves an impasse and funds an agreement with public employees, a valid contract exists with the public employees that cannot be abrogated. Id. at 673. In addition, however, the supreme court relied on the public employees’ constitutional right to collectively bargain under Article I, section 6 of the Florida Constitution. Id. at 672. Furthermore, the court distinguished its hold-tag in State v. Florida Police Benevolent Association, 613 So.2d 415 (Fla. 1992), because in that case, “no final agreement had been reached between the parties ... and funded ... by the legislature.” Id. at 672.
This case is and should be controlled by the logic and precedent of United Faculty of Florida, as in both cases the Legislature funded the impasse resolution. Acting as the third-party decision maker to resolve an impasse, the Legislature’s decision should be the final result, absent a compelling state interest that cannot be rectified by reasonable alternative means. In United Faculty of Florida, the court quoted its earlier decision in Florida Police Benevolent Association:
[wjhere the legislature provides enough money to implement the benefit as negotiated, but attempts to unilaterally change the benefit, the changes will not be upheld, and the negotiated benefit will be enforced.
Id. at 673 (emphasis added) (quoting Fla. Police Benevolent Ass’n). The court has thus declared that the Legislature will not be permitted to “unilaterally” abrogate the constitutionally-grounded collective bargaining rights of public employees.
The question at issue here is whether the Governor, by using his veto power, may unilaterally vacate the Legislature’s decision to resolve a collective-bargaining impasse. Based on logic, precedent, and the constitutional basis of public employees’ collective bargaining rights, the correct answer is no.
In Florida Police Benevolent Association, the supreme court held that the Leg- *742 Mature could not be compelled to appropriate funds to implement a negotiated agreement between the Governor, the employer, and the public employees, stating, “The fact that public employee bargaining is protected under Florida’s Constitution does not require us to ignore universally recognized distinctions between public and private employees.” 613 So.2d at 418. The court held that the separation of powers doctrine in Article II, section 3 and the provision of Article VII, section 1(c) of the state constitution requires that “exclusive control over public funds rests solely with the legislature.” Id. But .this decision also recognized that if the Legislature appropriated an adequate amount to fund a negotiated resolution of an impasse, the Legislature could not change the agreement, absent a compelling public interest. Id. at 421. The Legislature should be recognized as the final decision maker in the resolution of an impasse between the Governor and public employees here.
I would hold that when the Legislature appropriates the necessary funds to resolve an impasse- of collective bargaining between the Governor and public employees, this appropriation cannot be vetoed, absent a compelling public interest, in order to preserve any meaningful constitutional right of .public employees to collectively bargain under Article I, section 6 of the Florida Constitution. Such a limited holding would properly preserve this constitutional right, without doing inordinate harm to the authority of the Governor to lawfully exercise the veto authority under Article III, section 8 of the Florida Constitution,

. In 2010, the Legislature overrode eight vetoes of Governor Crist, but those vetoes were the "first overrides in 12 years.” Bill Kaczor, Florida lawmakers override 8 Crist vetoes, Des-eret News (Nov. 16, 2010, 12:00AM), http:// www.deseretnews.com/article/700082591/ Florida-lawmakers-override-8-Crist-vetoes. html?pg=all.

. Important here in context, when public employees do not receive a salary increase, their salary is actually reduced proportionate to the inflation rate. When this increase was vetoed, a pay increase granted by the Legislature to resolve an impasse of collective bargaining became a pay reduction. A public employee earning $40,000 in 2011 must earn $42,460 in 2016 to keep pace with inflation. Inflation Calculator, http://www.in2013dollars.com/ 2011-dollars-in-016?amount=40 (last visited Mar. 24, 2017).